Good morning. James Scholes on behalf of Seven Up RC Bottling Company of Southern California, Inc. Good morning. Sylvia Courtney on behalf of Amalgamated Industrial. Okay. All right. We're ready to hear the appellant's argument. Thank you, Your Honor. May I first request that I can reserve three minutes of my total time for rebuttal? Sure. Thank you, Your Honor. This appeal was filed with respect to appellant's motion to compel arbitration under a collective bargaining agreement with Seven Up Bottling Company. The motion was denied by the district court, the Honorable Margaret Morrow, and as a result of that denial, plaintiffs appealed to this court. There were two orders in the district court. One was entered on January 1st of 2004, and that order was considered a motion to dismiss a prior motion of the union that resulted from the filing of a complaint under the Labor Management and Reporting — I'm sorry, the Labor Management Relations Act, Section 301. I will not belabor the points on the procedural history because this court has asked us to address a particular question, but I would like to say that what we are requesting the court to do is to remand the case to the district court and that the district court should order arbitration in this case under Steelworkers Trilogy in a long line of precedents indicating that the language and the collective bargaining agreement is subject to interpretation by the court. We ask this court to review that matter de novo as well. I will not go through the provisions of the collective bargaining agreement unless the court asks us to, but since a particular question has been asked by the court, if you wish, I will address that question at this point or any other question that you have. Kennedy, I believe that the question that was asked by the court was whether after the decision in Circuit City in 2001, which decision basically said that all employment contracts other than those for transportation workers were considered to be within the scope of the Federal Arbitration Act. As a result of that decision, there's been some controversy over whether the cases arising from labor and management collective bargaining agreements are subject to the Federal Arbitration Act or are they simply subject to Section 301 of the Labor Management Relations Act. Given that the Circuit City case simply said that it applied to all employment contracts other than those for transportation workers engaged in interstate commerce, we have taken the position in this case that the Federal Arbitration Act, as well as Section 301, applies to this case. Circuit City did not involve a collective bargaining agreement, so that question continues to be raised among the circuits, including this one, because of the case in 2004 entitled, I believe it was, Power Agent. And in that case, Judge Marsha Brisson indicated that the circuit still does not ascribe to the idea that collective bargaining agreements are subject to the FAA. Now, as a result of several cases in 2004 and 2005 in other circuits, it appears that other circuits share the view that Section 301, as a result of the prior case of textile workers v. Lincoln Meals, provides a independent basis for jurisdiction. And in that case, Justice Douglas basically said that it was the job of the court to fashion labor law basically to be applied in collective bargaining agreements. I think our problem is a bit different here. And I don't believe that we are in a position to have to rely on the FAA jurisdiction, although under Circuit City it seems to apply to collective bargaining agreements. And Circuit City was the 2001 decision, is that right? Correct. And then subsequent to that, the union took a position that, in a prior dispute, just took the opposite position than it's taking today, is that? Well, not exactly, Your Honor. And the reason I say that is because the prior situation involved something that the employer called a cross grievance. Right. Related to another grievance. And that was in 2001 as well. We would explain that, and I think have explained it by saying sometimes in the give and take of labor relations, you have these little disputes. As a matter of fact, the union said something to the employer, the employer's human resources person or another individual, that they were hallucinating and believing that cross grievance was covered. Well, you take the position that it's best for your client at the time. That's what lawyers do, I presume. That's true. And the district court didn't consider us to have repudiated or waived as a result of that 2001. No, I don't think you necessarily have. But what we have to figure out is what's the right, which one is right. Which of these two positions is right as a matter of law? I understand. And let me then offer that under the circuit decisions in the Second and Third Circuits, that's Coca-Cola and I forget the exact name of the other case that we cited in the brief, I can find it, if you wish. But those circuits addressed a very similar collective bargaining agreement with very similar language and said that because of the presumption of arbitrability under Federal law and the broad language in those collective bargaining agreements which were similar to the one in the instant case, that all disputes under that, those collective bargaining agreements, should be subject to arbitration. And that is because those courts in the Second and Third Circuit could not say with positive assurance, and that is the standard under Steelworkers, that the interpretation of the agreement did not lead to the conclusion that arbitration was necessary, whether or not there was an employee-initiated grievance procedure. That's kind of the issue here. So you got to – you have the presumption of arbitration. On the one hand. On the other hand, you can't be subject to arbitration unless at some point you've agreed to that. That's true. You've got to weigh those two things. That's absolutely true. And the courts come out different in cases because of those things. What makes this particular appeal different, in our opinion, and what makes the district court, the second order of May 10th, 2004, different is that that order was based on a later motion to compel arbitration where a new argument was made to the court that in this collective bargaining agreement, there are sections that indicate that not all disputes have to go through the grievance procedure. Basically, there were sections 2303 and 2304, or two in 04, I believe, that said that in cases of new classifications and severability, those cases or those disputes could go directly to negotiation and then to arbitration. In addition, there was a section – the grievance procedure is a separate section from arbitration. It's our view that you can invoke arbitration without going through the grievance procedure. That, we felt, brought us within the scope of the decisions, at least in the Second and Third Circuit, and outside, or at least we could make a tenable argument that our particular collective bargaining agreement was not the same as standard concrete, which is the Ninth Circuit decision that Judge Morrill relied on in denying our motion to compel. So, yes, it is always a balancing act. Kennedy. You understand, we expect you to keep track of what time you want to keep for a rebuttal. Thank you very much, Your Honor. In fact, I will – I lost track of time. Thank you. It goes so fast, and you have no time. Now, at the outset, let me ask you, if the district court is correct, we have no jurisdiction. That is correct. And in spite of that, the district court stayed this whole thing in the district court, did it not? It did. And there's a parallel proceeding going on, I take it, that is getting some of these issues resolved? Actually, when you say parallel proceeding involving the same issues, it did not involve the same issues. It involved what was called an interest arbitration about contract formation. Okay. So there is no – there is no partial mootness or anything about that? No. What the arbitrator decided there was that certain provisions should be adopted as part of the collective bargaining agreement, as part of an interest arbitration for contract formation. Okay. What I'd like to address first is the jurisdictional issue, if you don't mind. First of all, Section 1 of the FAA excludes contracts of transportation workers, and the union in its answer, if you would look at excerpts of the Record 3, that's our first that the union – that it employed transportation workers and that the union represented the transportation workers under the collective bargaining agreement. And the union specifically admitted that in its answer, which is at excerpts of the Record page 50. And if you look at the collective bargaining agreement itself – I'm sorry, the union admitted it at supplemental excerpts of the Record page 123. If you look at the collective bargaining agreement itself, excerpts of the Record 50, there are seven classifications of drivers under this collective bargaining agreement. So under Section 1 of the FAA, there's a specific exclusion for transportation workers engaged in interstate commerce. Seven ups, transportation workers have to be engaged in interstate commerce in order for there to be 301 jurisdiction, which the union removed this case to federal court under 301 that a seven up must be involved in interstate commerce. So there's clear exclusion from the FAA under Section 1. Now, in addition, this court asked whether or not Lincoln Mills essentially has been overruled by Circuit City stores. And the answer to that is no, according to all the circuits that have addressed the issue since Circuit City was decided. And we specifically cited the case of Hope Electric out of the Eighth Circuit that specifically said Circuit City did not involve a labor dispute and that it had not overruled Lincoln Mills. We also cited the Fifth Circuit's decision in Goodrich Corporation, which said nevertheless most courts before and after Circuit City adhere to the traditional view, which is that Section 301 applies and not the FAA. And we also cited the Second Circuit's decision, both Coca-Cola and their more recent decision, Westerbrook Corporation v. Diatsu, 304F3200, that is that Section 301 applies and is analytically distinct from the FAA. And that's based on good Supreme Court authority. In addition to Lincoln Mills, the same day as Lincoln Mills, the U.S. Supreme Court decided Goodall Sanford v. United Textile Workers, 353 U.S. 550, which specifically the court there rejected application of FAA cases, saying we don't need to concern ourselves with FAA cases. Why? Because the right enforced here is one arising under Section 301. That's what the court said. And if you look at a later Supreme Court case, United Paper Workers International v. MISCO, 484 U.S. 2941 at Note 9, the court specifically says that federal courts have often looked to the FAA for guidance in labor arbitration cases, especially in the wake of the holding of Lincoln Mills, so that they can incorporate and look to the FAA for guidance. If the FAA were directly applicable to labor agreements, then they wouldn't need to look at it for guidance. So without Section 16 of the FAA, there's no appellate jurisdiction here. And so there is no jurisdiction for two reasons. One is because this is a case involving a collective bargaining agreement governed by 301. And number two is because it's a case involving transportation workers. The agreement, the collective bargaining agreement of 7-Up, involves transportation workers. Now, on the actual substantive issue, we believe that the court's ruling in standard Is there any evidence that these transportation workers are involved in interstate commerce? Other than the answer of the union and their removal notice that says that we're involved in interstate commerce, and in order to have jurisdiction in the federal court, 7-Up would have to be involved in interstate commerce. So the union alleged that we were involved in interstate commerce. But I will note one thing. There is authority, and I'll cite the case Rosen v. Transax Ltd., 816 S. Up, 1364, 1371, a district court of Minnesota, that says that the actual drivers themselves, the truck drivers, do not have to cross interstate lines in order to be involved in interstate commerce. So essentially, there doesn't have to be proof that the 7-Up drivers cross interstate lines.  Actually, they do cross interstate lines, but it's not in the record. But 7-Up is certainly engaged in interstate commerce within the meaning of 301 and within the meaning of Section 1 of the FAA. But for this record, you rely on the union's assertion that you are. Correct. Their answer. And I take it that that's not challenged by you at any place in the record. No, that's correct. That's correct. We did not seek to remand. We agreed that there was 301 jurisdiction. Now, on the issue of the substantive issue, I do want to note that they rely heavily on the Second Circuit case in Coca-Cola. But following Coca-Cola, the Second Circuit decided a case that was very similar to ours and similar to Standard Concrete. That case was Adirondack Transit Lines, Inc. versus United Transportation Union, 305F, 2nd 82. That's the Second Circuit 2002 case. It said the same thing as Standard Concrete, which was where you have a union or employee initiated grievance procedure where you have sequential steps that you have to go through each of the steps in order to get to arbitration that basically the employer must go to court. The employer can't go through the grievance procedure. And if you look at each of the steps of our collective bargaining agreement grievance procedure, they specifically note that they can only be initiated by the union or by the employee. Section 1901, this is at excerpts of the Record 44 of the grievance procedure, says a grievance as defined above shall be processed in the following manner. And it goes through three steps that are all initiated either by the union, the union steward, or the employee. And then at excerpts of the Record 45, at 1903, it specifically states that in the case of a deadlock, this is at the fourth step, the joint arbitration board, if a grievance has not been settled according to the provisions of Section 1903, it may be submitted to arbitration upon written request of either party. But that is only if it has gone through all the steps of the grievance procedure. So we believe that standard concrete is directly on point. It's a recent decision of this Court, and we believe it's directly controlling. Unless you have questions, I will submit the case. Thank you. Thank you. Thank you, Your Honor. I have a very brief time here, but I'd like to respond to the fact that there was no record evidence of whether or not the workers for 7-Up are engaged in interstate commerce. And in our brief, we point out that there is a very specific meaning to those terms as to whether someone is either involved in, engaged in interstate commerce and thus subject to the exemption under the FAA. In any event Where does that leave us? Does that leave us with a real question about that? Well, I don't believe it does. In which event we unravel removal, don't we? Well, that's a good point, Your Honor. But I don't think we really need to reach the question in this case of whether the FAA applies, because it's a second or an independent basis of jurisdiction. We have 301 jurisdiction. And the reason for the appeal and the reason that we believe the appeal is proper is because it was an appeal of a collateral order at least, and there was no time limit. The Court actually didn't treat this as a motion for reconsideration, and she did issue a stay indicating that we did have a chance under certain interpretations of prevailing despite standard concrete. So we think the question of 301 and the FAA remains open, and it's not necessary to reach in this case. Thank you very much. Thank you very much. Collateral stand submitted.
judges: Leavy, Pregerson, Beistline